**William J. FOULKE, Sr., Administrator of the Estate of William J. Foulke, Jr., Deceased,**

v.

**Raymond F. MEILUTA.**

Civ. A. No. 19989.

United States District Court
E. D. Pennsylvania.

Aug. 13, 1958.

David Cohen, Jerome J. Verlin, Cohen & Ornsteen, Philadelphia, Pa., for plaintiff.

Max E. Cohen, Philadelphia, Pa., for defendant.

EGAN, District Judge.

This is a diversity action brought against a Pennsylvania citizen by an administrator ad prosequendum who is a New Jersey citizen. The accident which gave rise to this suit happened in New Jersey, the death of plaintiff's decedent being instantaneous.

It occurred about 2:30 on the morning of March 18, 1955. Decedent, a few months short of 21 years of age, was an invited guest in defendant's car which was being driven by the defendant in a westerly direction towards Philadelphia on the westbound ramp at Airport Circle, Pennsauken Township, New Jersey. It was a clear night, the roadway was dry and no other cars were in sight. There were three persons riding in the front seat of the automobile, the defendant-driver, the deceased and another man named Ragen. Ragen was riding in the middle. He was not produced as a witness at the trial, although he was the only eyewitness, with the exception of the defendant.

Defendant's car went out of control, jumped a 12 or 14 inch curb to its right, struck a guard pole on the boundary of the highway and proceeded along the boundary until it got to the end of the retaining fence and ran off and overturned in a field about 54 feet from the north curb of the highway. Decedent's body was found on the ground near the car. Defendant's car had traveled approximately 476 feet from the point of impact to the point where it came to rest in the field.

Just prior to the accident, defendant's car was traveling at a speed of about 45 miles per hour, which is posted as the permissible speed limit at the place where it occurred.

The Court submitted the case to the jury under the New Jersey doctrine of

res ipsa loquitur. The jury returned a verdict for plaintiff in the sum of $7,500. Defendant has filed motions to set aside the verdict and enter judgment in his favor, or in the alternative, for a new trial.

At the beginning of the trial, defendant moved to dismiss the complaint on the ground that the applicable New Jersey statute was cited incorrectly in that plaintiff cited the 1937 statute "as amended" instead of the superseding 1952 statute. Over the objection of defendant, the Court permitted plaintiff to amend his complaint so as to cure this technical defect. Said amendment was orally made in open Court.[1]

Defendant now asserts this as a ground for judgment notwithstanding the verdict upon the theory that the statute of limitations having run, plaintiff's amendment came too late. The motion for judgment notwithstanding the verdict must be denied.

Rule 15 of the Federal Rules of Civil Procedure, 28 U.S.C.A., deals with amendments and supplemental pleadings. Under section (a) thereof, certain amendments, not here relevant, may be made as of course, or "otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; *and leave shall be freely given when justice so requires.*" (Emphasis supplied.)

Rule 15(c) states:

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or *attempted* to be set forth in the original pleading, the amendment relates back to the date of the original pleading." (Emphasis supplied.)

We are of the opinion that plaintiff's pleading sufficiently stated a good cause of action under the 1937 Act, as well as under the 1952 Act; that the reference to the Act of 1937 was merely surplusage under the Federal Rules regarding notice pleading, as indeed was the reference to the 1952 Act in the amendment; that failure to permit the amendment, for the reasons advanced, would have put plaintiff out of Court; that the defendant was not prejudiced by the amendment because he had notice of the cause before the statute of limitations ran and that the ends of justice required that the amendment be permitted.

Professor Moore in his treatise on Federal Practice states:

Rule 15 is one of the most important of the rules that deal with pleadings. It re-emphasizes and assists in attaining the objective of the rules on pleading; that pleadings are not an end in themselves, but are only a means to the proper presentation of a case; that at all times they are to assist, not to deter the disposition of litigation on the merits. The Rule, when read in conjunction with other rules, clearly bears out the foregoing statement. Rule 1 provides that the Rules "shall be construed to secure the just, speedy, and inexpensive determination of every action." Rule 8(f) states the canon of construction: "All pleadings shall be so construed as to do substantial justice."[2]

See International Ladies' Garment Workers' Union v. Donnelly Garment Co., 8 Cir., 1941, 121 F.2d 561; 3 Moore, Federal Practice, §§ 15.02, 15.08.

The three Pennsylvania cases relied on by defendant have no application to the case at bar. The defendant's mo-

1. Prior to the amendment, the complaint read: "8. The plaintiff brings this action on behalf of the survivors of decedent under and by virtue of R.S.1937, 2 New Jersey Statutes Annotated 47–a; C.S.1908, Sec. 8 as amended." The substituted amendment now reads: "8. The plaintiff brings this action on behalf of the survivors of decedent under and by virtue of R.S.1952, 2 New Jersey Statutes Annotated, 31–1 and 2 [N.J.S.A. 2A:31–1, 2]." (N. T. 17–19).

2. 3 Moore Federal Practice, § 15.02.

tion for judgment notwithstanding the verdict, on this ground, will be denied.

█ Defendant also contends that the Court erred in permitting the case to go to the jury on the doctrine of res ipsa loquitor. This is based on the theory that the New Jersey conception of res ipsa only applies where there is *no* explanation as to the cause of the accident. Res ipsa loquitur, as applied in New Jersey, merely creates a permissible inference upon which a jury may bring in a verdict for the plaintiff. Bevilacqua v. Sutter, 1953, 26 N.J.Super. 394, 98 A. 2d 60.

█ Defendant contends that because an explanation was given, the doctrine is no longer applicable. He also urges that without the benefit of res ipsa, plaintiff has failed to make out a case. What are the facts?

Plaintiff's first witness was Police Officer George Edward Broom, Jr., of the Pennsauken Township Police, who was summoned to the scene of the accident shortly after it happened. He made a physical examination of the defendant's car, as well as the general area, and made a written report for his superiors. This report was produced at the time of trial. It included a reference to a conversation he had with the defendant at the locus in quo immediately after the accident. Officer Broom identified photographs which were offered in evidence, and also testified to certain distances which were relevant to the issue. Among other things, he also testified that he found markings from the car on the guard rail and markings along the curb from the rims of the wheels and tire marks from the point of impact to the place where the car came to rest. He stated that "the curb was all skinned up and all the way along." He further testified that the left rear tire was the only one inflated and intact when he examined the automobile.

On *cross-examination,* Officer Broom stated, among other things, that the defendant told him the car "started to pull to the right" as it was coming down the ramp. Appearing on the scene less than a half hour after the accident happened, the officer took the defendant's statement. Nowhere in that statement does it appear that he told the officer *at that time* that his right front tire *blew out,* causing his car to pull to the right and out of control. The officer admitted that *"later"* he heard the defendant offer that explanation of the accident. By "later", he meant at a Coroner's hearing in New Jersey growing out of the same accident.[3] (N.T. 84–86.)

In order to establish the "invitee" status of the decedent, plaintiff called the defendant as on cross-examination. (N.T. 95.) However, during this portion of his testimony, no explanation as to the cause of the accident was given. Upon being recalled in his own defense, he testified as follows (N.T. 138–139):

"A. I was going towards Philadelphia * * * and on top of the ramp, my front tire blew out, and in trying to control the car, she hit the curb line, and then the car jumped the curb, * * *.

"Q. * * * by the way, which tire blew out? A. My right front tire.

"Q. What happened to the other couple of tires that were— A. They were tubeless tires, and from banging against the curb, the air went out of them.

"Q. After the accident did you inspect the tires? A. Yes, sir, I inspected all of the tires. In fact, I used two of the tires the air went out. (sic)

"Q. By the way, these tires of yours, how long had you had them? A. For approximately a month. * * *

---

3. By mutual agreement between counsel, all reference to the Coroner's hearing was excluded at the time of trial. However, Officer Broom testified that he heard the explanation at "testimony later."

"Q. How much mileage had these tires been used for? A. Less than one thousand miles.

"Q. Were they new when you got them? A. Yes, sir."

Defendant further contended that it was not the contact with the curb that blew out the right front tire because "my tire was blown out on the top of the side wall, not the spot where it would come in contact with the curb." (N.T. 144.)

Then upon further cross-examination by plaintiff, he testified:

"Q. Well, what do you mean by the top of the side wall? A. By the rim.

"Q. By the rim, is that right? A. Yes.

"Q. Well, now, what evidence— A. In the white part.

"Q. What? A. In the white part of the tire.

"Q. That's right. Now, going over there could not cause a blow-out in your car, could it? A. Yes, it could cause a blowout, but it would cause it in the spot that came in contact with the curb.

"Q. It couldn't cause a blowout? A. Not at the spot that didn't come in contact with the curb."

Defendant contends that the foregoing testimony offered an explanation which should have concluded the case. This is urged on the ground that res ipsa loquitur is applied only in a situation where there is absent an explanation by the defendant. Defendant therefore charges that the Court erred (a) in instructing the jury on res ipsa and that that alone entitled him to a new trial, and (b) that the res ipsa instruction being improper, plaintiff's other proof fell short of showing negligence, thus entitling defendant to a directed verdict, and now judgment notwithstanding the verdict. With this, we cannot agree.

■ We do not believe that a plaintiff should lose the benefit of the doctrine merely because the defendant gives *some* explanation as to how the accident oc-

curred. Defendant's explanation must be reasonable, rational and not inconsistent, and one carrying conviction. Of course, these questions are best judged by the jury. They have had the benefit of seeing the witnesses and hearing the conflicting evidence produced by both sides.

We think it was proper for the Court to send the case to the jury under the New Jersey doctrine of res ipsa loquitur. Bevilacqua v. Sutter, 1953, 26 N.J.Super. 394, 98 A.2d 60; McKinney v. Public Service, 1950, 4 N.J. 229, 72 A.2d 326; Ehrlich v. Merritt, 3 Cir., 1938, 96 F.2d 251. Defendant's motions for judgment notwithstanding the verdict and, in the alternative, for a new trial must be denied.